```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Linda Downing**

    v.                        Case No. 19-cv-1047-PB

**Andrew Saul, Commissioner**
**Social Security Administration**


                        **REPORT AND RECOMMENDATION**

Linda Downing challenges the denial of her application for a period of disability and disability insurance benefits pursuant to 42 U.S.C. § 405(g). She contends that the Administrative Law Judge ("ALJ") erred in evaluating her mental residual functional capacity for the period prior to June 2016. The Commissioner, in turn, moves for an order affirming the ALJ's decision. Finding no reversible error, the court recommends that the district judge deny Downing's motion and grant the Commissioner's motion.

## I.   STANDARD OF REVIEW

The court is authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the

proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). The court defers to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

## II.   BACKGROUND[1]

**A.   Procedural Facts**

Downing is a 60-year-old woman who completed one year of college. She previously worked as a billing clerk in a hospital and a part-time associate/cashier at the Rite Aid Pharmacy. She alleges disability as of August 1, 2012, due to major depressive disorder, anxiety disorder, somatoform disorder, diabetes mellitus, peripheral neuropathy, obesity, and osteoarthritis of the knees.

Downing first applied for disability insurance benefits ("DIB") in March 2012. After her claim was eventually denied at the final agency level in July 2016, she sought review in this court. The parties agreed to a remand, and the court remanded the case for further proceedings in March 2017. In the interim, Downing filed a new application for DIB. Her claim was approved at the initial level with a disability onset date of April 22, 2015.

On remand of her first application, the Appeals Council assigned the case to a new ALJ, who held two hearings in November 2018 and March 2019. The ALJ issued a partially favorable decision, finding that Downing had become disabled on

---

[1] The court provides a brief summary of the relevant facts. A more detailed recitation appears in the parties' statements of material facts (Doc. Nos. 8 & 10), which the court incorporates by reference. See L.R. 9.1(b)-(c).

June 1, 2016, and reopened the prior determination that had found her disabled as of April 22, 2015. On appeal, Downing challenges the ALJ's determination that she was not disabled during the period between August 1, 2012 and May 31, 2016.

**B.   Relevant Medical Opinions**

Downing attended a consultative examination with Cheryl Bildner, Ph.D., a licensed psychologist, in June 2012. She was a good historian, cooperative with the examination, and intermittently tearful. On examination, her speech was organized and goal-directed; she was alert and oriented with no deficits in recent or remote memory; her mood was depressed; her thought process was intact; and she focused on her financial and physical problems. Downing recalled 3/3 words immediately and 2/3 words following a five-minute delay. She correctly spelled the word "world" forward and backward. Her attention and concentration were good, and she was within the average range for intelligence and fund of knowledge. Downing followed simple directions, her insight appeared fair, and her motivation seemed variable. See Tr. 442-43.

Dr. Bildner opined that Downing could complete her activities of daily living but that sometimes she performed them in a modified manner due to her lower extremity pain. She also opined that Downing could understand and recall basic work-like procedures, noting that no gross deficits were observed in her

4

cognitive functioning.  According to Dr. Bildner, Downing could interact appropriately and communicate effectively with others, maintain attention and concentration in a place of employment, cope with stress in a work environment, make simple decisions, maintain attendance, and interact appropriately with supervisors.  Her task completion, however, might be prolonged due to reported pain and physical limitations.  See Tr. 444-45.

James Claiborn, Ph.D., a licensed psychologist, testified as an impartial medical expert at Downing's March 2019 hearing. He opined that Downing suffered from depression, anxiety disorder, and somatoform disorder, resulting in moderate impairments in her abilities to understand, remember, or apply information, interact with others, adapt or manage oneself, and concentrate, persist, or maintain pace.  See Tr. 815-16.  He also opined that she was limited to performing "simple tasks" and no more than intermittent or incidental contact with the public.  See Tr. 817-18.  The ALJ asked Dr. Claiborn whether the limitation to "simple tasks" would "preclude instructions that are detailed, but not complex," to which Dr. Claiborn responded, "I think detailed would not be problem.  Complex would be a problem."  Tr. 818.  When asked whether the limitations he described had been present since August 2012, Dr. Claiborn responded that the level of impairment "basically seems to be more supported close to December of 2016 than it is to August of

5

2012." Tr. 819. Regarding the interaction between pain and Downing's somatoform disorder, Dr. Claiborn testified that

> [s]ometimes with somatoform disorders, we may attribute the pain entirely to psychological problems. Sometimes, as in the case of this particular individual, it's assumed that the pain has an explanation, physical explanation. We're not seeing disproportionate or unexplained pain, which is also a somatoform disorder. But we are seeing a person who is reacting in ways where they're paying more attention to the pain or that it's affecting the mood in substantial ways, things like that. So having the pain is part of the issue, but pain is, in this particular individual, it is assumed to be the result of a physical disorder.

Tr. 825.

## C. The ALJ's Decision

The ALJ assessed Downing's claim under the five-step, sequential analysis required by 20 C.F.R. § 404.1520. At step one, she found that Downing had not engaged in substantial gainful activity since her alleged disability onset date of August 1, 2012. Tr. 765. At step two, the ALJ found that Downing's diabetes mellitus, obesity, osteoarthritis of the knees, peripheral neuropathy, supraspinatus tear of the left shoulder, degenerative disc disease of the lumbar spine, major depressive disorder, anxiety disorder, and somatoform disorder qualified as severe impairments. Tr. 765. At step three, the ALJ determined that, prior to June 2016, none of Downing's impairments, considered individually or in combination, qualified for any listed impairment. Tr. 765.

The ALJ then found that, prior to June 1, 2016, Downing had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following exceptions:

> [T]he claimant can lift and carry ten pounds occasionally and less than ten pounds frequently. The claimant can stand/walk for four hours and sit for six hours in an eight-hour workday with normal breaks. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. The claimant should have less than occasional exposure to extreme cold and hazards, such as unprotected heights and dangerous machinery. The claimant can understand, remember, and carry out uncomplicated and detailed instructions, which I have defined as tasks that can be learned in less than six months. The claimant is capable of engaging in incidental contact with the public, but dealing with the public should not be part of her job duties though she can tolerate brief encounters. The claimant would need an environment where tasks are generally performed in a solitary manner, but she could perform tandem tasks up to ten percent of the workday. In such a setting, the claimant can collaborate with coworkers and supervisors on routine matters and can adapt to routine changes.

Tr. 768-69.

In assessing Downing's mental RFC prior to June 2016, the ALJ gave "great weight" to the opinion of testifying medical expert Dr. Claiborn and "less weight" to the June 2012 opinion of consultative examiner Dr. Bildner.[2]  Tr. 778-79.

---

[2] The ALJ evaluated additional medical opinions in the record, including Dr. Bildner's December 2016 opinion. As Downing does not challenge the ALJ's weighing of those opinions, the court does not address them.

Relying on the testimony of a vocational expert, the ALJ then found at step four that, prior to June 1, 2016, Downing could have performed her past relevant work as a billing clerk. Tr. 781-82. Accordingly, the ALJ concluded that Downing had not been disabled prior to June 1, 2016. Tr. 784. However, the ALJ found that beginning on June 1, 2016, the severity of Downing's mental impairments met the criteria of Listing 12.04, resulting in a finding of disability as of that date. Tr. 782-84.

### III. ANALYSIS

Downing challenges the ALJ's decision that she was not disabled prior to June 1, 2016, on the ground that the ALJ's mental RFC assessment is flawed. Specifically, she contests the finding that she could understand, remember, and carry out detailed and uncomplicated instructions, as well as the ALJ's weighing of two medical opinions. Because substantial evidence supports the ALJ's RFC finding and her evaluation of the medical opinions, remand is not necessary.

**A.   RFC Assessment**

A claimant's RFC is "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). It must be crafted by an ALJ based on all relevant evidence in the record. Id. In so doing, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Stephenson v. Halter, 2001

8

DNH 154, 2001 WL 951580, at *2 (D.N.H. Aug. 20, 2001) (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)).  This is typically done by "piec[ing] together the relevant medical facts from the findings and opinions of multiple physicians," Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987), but may sometimes incorporate "common-sense judgments about functional capacity" based upon those findings. Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).  The ALJ, however, may not "interpret raw medical data in functional terms" or substitute her own opinion on medical issues.  Nguyen, 172 F.3d at 35.

The ALJ found that Downing retained the capacity to understand, remember, and carry out uncomplicated and detailed instructions, which the ALJ defined as tasks that could be learned in less than six months.  See Tr. 767.  Downing contends that this finding is inconsistent with Dr. Claiborn's opinion and was based upon the ALJ's own evaluation of raw medical evidence.  The record does not support either contention.

First, there is no inconsistency between the ALJ's finding and Dr. Claiborn's opinion.  Dr. Claiborn opined that Downing was restricted to "simple tasks" but that this limitation did not preclude "detailed" instructions, only "complex" ones.  Tr. 818.  This is in line with the RFC finding that Downing could handle "uncomplicated and detailed instructions."  Tr. 767.

To the extent Downing argues that Dr. Claiborn's opinion is internally inconsistent, the court disagrees.  There is a difference between "the ability to perform tasks and the ability to understand instructions," such that it is "possible to be limited in the former without being limited to the same extent (or at all) in the latter."  King v. Saul, 787 Fed. App'x 170, 171 (4th Cir. 2019) (per curiam) (emphasis in original); see also Winningham v. Colvin, No. 4:12-CV-6, 2013 WL 2177583, at *6 (N.D. Ind. May 20, 2013) (concluding that "performing simple tasks is not necessarily inconsistent with the ability to carry out detailed instructions").  Furthermore, even "simple tasks (such as driving directions) could have detailed instructions." King, 787 Fed. App'x at 171.  Accordingly, Dr. Claiborn's opinion that Downing could handle detailed instructions despite being limited to simple tasks is not internally inconsistent.

Second, the ALJ did not interpret raw medical data in functional terms when she defined "uncomplicated and detailed instructions" as tasks that could be learned in less than six months.  See Tr. 767.  Downing is correct that Dr. Claiborn's opinion does not include this definition.  In making her assessment, however, the ALJ made a common-sense judgment based on other evidence in the record.  Specifically, the ALJ reasoned that Downing had worked a semi-skilled job, as a part-time associate/cashier at the Rite Aid Pharmacy, after her alleged

disability onset date, and that she left this job due to an inability to remain on her feet and a reduction in her hours, not because she could not mentally perform the job. See Tr. 777. Among other mental demands, semi-skilled work requires a person to understand, remember and carry out detailed instructions. See U.S. Soc. Sec. Admin., Program Operations Manual System § DI 25020.010(B)(4), available at http://policy.ssa.gov/poms.nsf/aboutpoms (last visited May 11, 2020)[3]; see also Serafin v. Berryhill, No. 18-CV-1053 SMV, 2019 WL 3843051, at *4 (D.N.M. Aug. 15, 2019). Further, semi-skilled jobs correspond to a specific vocational preparation (SVP) range of 3-4, which means that a typical worker needs up to six months to learn the techniques, acquire information, and develop the ability to perform the job. See SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000); U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. rev. 1991), App. C, § II, 1991 WL 688702. Therefore, the ALJ's RFC finding that Downing could understand, remember, and carry out uncomplicated and detailed instructions, defined as tasks that can be learned in less than

---

[3] The Program Operations Manual System ("POMS") contains "the publicly available operating instructions for processing Social Security claims." Artz v. Barnhart, 330 F.3d 170, 176 (3d Cir. 2003) (internal quotation marks omitted). "Although not binding law, . . . POMS is persuasive authority." Buck v. Berryhill, 869 F.3d 1040, 1050-51 (9th Cir. 2017) (internal quotation marks and brackets omitted).

11

six months, is consistent with the requirements of semi-skilled work. The ALJ supportably found that Downing's return to work in a semi-skilled position during the period of alleged disability supported this RFC finding. See 20 C.F.R. § 404.1571 ("Even if the work [the claimant has] done [during the period of alleged disability] was not substantial gainful activity, it may show that [she is] able to do more work than [she] actually did.").

Because Downing engaged in semi-skilled work during the period of alleged disability and Dr. Claiborn testified that she could perform simple tasks that required detailed and uncomplicated instructions, substantial evidence supports the ALJ's mental RFC assessment.

B. **Medical Opinions**

Downing argues that the ALJ erroneously gave "great weight" to Dr. Claiborn's opinion and "less weight" to Dr. Bildner's 2012 opinion. The court finds no merit in either argument.[4]

An ALJ must consider "medical opinions" provided by both treating and non-treating "acceptable medical sources," "together with the rest of the relevant evidence." 20 C.F.R.

---

[4] In the arguments section of her brief, Downing recites the ALJ's findings regarding additional medical opinions, but she does not allege any error in the ALJ's analysis or findings. Accordingly, the court deems potential arguments relating to those opinions waived for insufficient development. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

12

§ 404.1527(a)-(b) (effective for claims filed before March 27, 2017); see SSR 96-8p, 1996 WL 374184, at *7. In addition, the ALJ must address each medical opinion and explain why those that conflict with the RFC assessment were not adopted. SSR 96-8p, 1996 WL 374184, at *7.

The regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). When weighing a medical opinion, an ALJ must consider, inter alia, the nature of the relationship between the medical source and the claimant, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the source of the opinion is a specialist. Id. § 404.1527(c).

An ALJ is generally required to give more weight to the opinion of a source who has examined a claimant than to the opinion of a nonexamining source. Id. § 404.1527(c)(1). "However, just as an ALJ may properly decline to give controlling weight to the opinion of a treating source, an ALJ may also discount the weight given to the opinion of an examining source in favor of the opinion of a nonexamining source." Wall v. Berryhill, 2019 DNH 103, 2019 WL 2723887, at

13

\*4 (D.N.H. June 27, 2019) (quoting Freddette v. Berryhill, 2019 DNH 003, 2019 WL 121249, at \*5 (D.N.H. Jan. 7, 2019)).

1. Dr. Claiborn's Opinion

Downing argues that the ALJ erroneously gave "great weight" to Dr. Claiborn's opinion based, in part, upon a finding that "his residual functional capacity considered [Downing's] reports of pain as part of her diagnosis of somatoform disorder." Tr. 778. She maintains that this finding is contradicted by Dr. Claiborn's testimony. Having carefully reviewed the relevant testimony, the court disagrees.

Dr. Claiborn testified that pain was not a symptom of Downing's somatoform disorder because her pain was assumed to result from a physical disorder. See Tr. 825. Rather, the way she was processing that pain, such as focusing her attention on it or having it substantially affect her mood, was a symptom of her somatoform disorder, which Dr. Claiborn considered when assessing Downing's limitations. See Tr. 825. Thus, the ALJ supportably determined that Dr. Claiborn had considered the effect of pain as part of Downing's somatoform disorder.

In addition, the ALJ considered the combined effect of Downing's pain and fatigue apart from Dr. Claiborn's testimony. The ALJ concluded that no further restriction in her RFC was needed, because the treatment notes showed that Downing was generally in no acute distress, her mental status examinations

14

were primarily benign, there were no reports of frequent fatigue, and her pain was treated conservatively. See Tr. 777. Downing alleges no error with this analysis. Accordingly, the court finds that the ALJ properly considered the impact of Downing's pain on her functioning and supportably gave "great weight" to Dr. Claiborn's opinion.

2. Bildner's Opinion

Downing contends that the ALJ erroneously assigned "less weight" to the opinion of consultative examiner Dr. Bildner, because Dr. Claiborn testified that he relied, in part, on Dr. Bildner's opinion. This argument is meritless. The ALJ reasoned that Dr. Bildner examined Downing prior to the alleged disability onset date, whereas Dr. Claiborn had the benefit of the full medical record. See Tr. 779. This is a legitimate reason to account for the relative weight the ALJ assigned to the two opinions. See 20 C.F.R. § 404.1527(c)(6) ("the extent to which a medical source is familiar with the other information in [a claimant's] case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion").

To the extent Downing argues that the ALJ's analysis is flawed because she failed to resolve an inconsistency between Dr. Bildner's and Dr. Claiborn's opinions, the court is not persuaded that the two are inconsistent. Dr. Claiborn opined

15

that Downing could complete simple tasks that require detailed and uncomplicated instructions. Tr. 818. On the other hand, Dr. Bildner opined that Downing could recall "basic work like procedures," based on her observation of "[n]o gross deficits . . . in cognitive functioning." Tr. 445. Contrary to Downing's suggestion, Dr. Bildner did not offer an opinion on the types of instructions Downing could understand and remember. In any event, even if the two opinions were inconsistent in this regard, as discussed above, the ALJ supportably gave more weight to Dr. Claiborn's opinion. Accordingly, Downing's challenges to the ALJ's weighing of medical opinions fail.

## IV.   CONCLUSION

For the aforementioned reasons, Downing's motion for an order reversing the Commissioner's decision (Doc. No. 7) should be denied, the Commissioner's motion for an order affirming his decision (Doc. No. 9) should be granted, and the clerk of the court should be directed to enter judgment in favor of the Commissioner and close the case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the

right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                                     _/s/ Andrea K. Johnstone_
                                                                     Andrea K. Johnstone
                                                                     United States Magistrate Judge

July 7, 2020

cc:  D. Lance Tillinghast, Esq.
     Jessica Tucker, Esq.